## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYSTAL A. BLAKEMAN,                          )
                                              )
            Plaintiff,                        )
                                              )
      v.                                      )      Civ. Action No. 12-416-LPS-CJB
                                              )
FREEDOM RIDES, INC., and                      )
HERTRICH'S OF MILFORD LTD., d/b/a             )
HERTRICH FORD LINCOLN MERCURY                 )
                                              )
            Defendants.                       )

### REPORT AND RECOMMENDATION

In this action Plaintiff Crystal A. Blakeman ("Plaintiff") brought suit against Defendants

Freedom Rides, Inc. ("Freedom Rides"), and Hertrich's of Milford Ltd., d/b/a Hertrich Ford

Lincoln Mercury ("Hertrich") (collectively, "Defendants") alleging causes of action arising under

the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA") and the Delaware

Workers' Compensation Act, Del. Code Ann. tit. 19, § 2301, *et seq.* (D.I. 1)  Presently before

the Court are Hertrich's and Freedom Rides' Motions to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) (collectively, "Motions").  (D.I. 7, 9)

For the reasons that follow, the Court recommends that the Motions be converted to

motions for summary judgment and that they be GRANTED-IN-PART and DENIED-IN-PART.

Specifically, the Court recommends that Defendants' Motions be DENIED as to the ADA claim,

Freedom Rides' Motion be DENIED as moot as to the Delaware Workers' Compensation Act

claim, and Hertrich's Motion be GRANTED as to the Delaware Workers' Compensation Act

claim.

## I.    BACKGROUND

## A.    Parties

Plaintiff is a Delaware resident and describes herself as a former employee of both Defendants: Freedom Rides and Hertrich.[1] (D.I. 1 at ¶¶ 1, 15) Hertrich is an automobile dealership, which was incorporated in Delaware in 1997. (D.I. 8, ex. U; *see also* D.I. 10, ex. U)[2] Hertrich is wholly owned by The Hertrich Family of Auto Dealerships, Inc., (D.I. 8, ex. V), which, in turn, is wholly owned by Frederick W. Hertrich III, (*id.*, ex. Y).

Freedom Rides is a Delaware corporation engaged in the leasing of automobiles to consumers. (D.I. 1 at ¶ 2; D.I. 8 at 2) Freedom Rides is owned by Christopher D. Hertrich and Frederick W. Hertrich, IV. (D.I. 8, ex. T (noting that Christopher D. Hertrich and Frederick W. Hertrich, IV own 735 and 765 shares of the 1,500 authorized capital stock shares of Freedom Rides, respectively)) George H. Sapna III, at all times relevant to this action, has been the President of Freedom Rides. (D.I. 13, ex. FF (hereinafter "Sapna Affidavit") at ¶ 1) For purposes of these Motions it is not disputed that, throughout the relevant time period, Freedom Rides employed less than 15 persons (and that Freedom Rides and Hertrich collectively employed greater than 15 persons). (*See* D.I. 10, ex. DD (Freedom Rides' Employee Register for the period ending August 8, 2010 showing twelve employees))

## B.    Plaintiff's Employment

---

[1]     As is discussed more fully below, the parties dispute whether Plaintiff worked only for Freedom Rides (as Defendants contend), or whether she can be said under the law to have been employed by both Defendants functioning as a "single employer" (as Plaintiff contends).

[2]     For simplicity and because the exhibits attached to Hertrich's Opening Brief, (D.I. 8), and Freedom Rides' Opening Brief, (D.I. 10), are (with one exception) the same, when the Court intends to refer to such an exhibit regarding either Defendant, it will typically do so by referring to the exhibits in Hertrich's Opening Brief.

On or about October 5, 2009, Plaintiff was interviewed in Hertrich's Milford office by Barry Smi for a position as a cashier/clerk. (D.I. 11, ex. A (hereinafter, "Blakeman Affidavit") at ¶¶ 1-2; D.I. 13, ex. EE (hereinafter "Smi Affidavit") at ¶¶ 5-6)[3] Although the parties dispute whether Mr. Smi was acting on behalf of Freedom Rides or Hertrich when he was interviewing Plaintiff, and whether Mr. Smi made the decision to hire Plaintiff,[4] it is not disputed that Plaintiff began her employment on or around October 5, 2009. (Blakeman Affidavit at ¶ 1; D.I. 8 at 5)

For the first few weeks of her employment, Plaintiff worked out of Hertrich's Human Resources office. (Blakeman Affidavit at ¶ 4; Smi Affidavit at ¶¶ 10-11; Sapna Affidavit at ¶¶ 10-11) During this period, Plaintiff's main duty was to order supplies to be used for the opening and eventual operation of the Dover, Delaware location of Freedom Rides. (Blakeman Affidavit at ¶ 5; Smi Affidavit at ¶¶ 8-9; Sapna Affidavit at ¶¶ 8-9) Although Plaintiff undisputedly used a credit card to order these supplies, the parties dispute the owner of the credit card.[5]

During the course of her employment, Plaintiff received a number of disciplinary warnings, which lead to her eventual termination on August 2, 2010. On June 24, 2010, Plaintiff received a written warning and was placed on 90-day probation for violating company policy.

---

[3]      Plaintiff appears to characterize this interview as being for a position with both Defendants, (see Blakeman Affidavit at ¶¶ 1-2), whereas Mr. Smi characterizes this interview as being for a position with Freedom Rides, (see Smi Affidavit at ¶¶ 5-6).

[4]      As described more fully below, Plaintiff avers that Mr. Smi made the decision to hire her, (Blakeman Affidavit at ¶ 3), while Mr. Smi and Mr. Sapna aver that Mr. Sapna, alone, made the decision to hire Plaintiff, (Smi Affidavit at ¶¶ 6-7; Sapna Affidavit at ¶¶ 6-7).

[5]      (Compare Blakeman Affidavit at ¶ 5 ("While ordering these supplies, I was instructed to use, and did use, a credit card assigned to Hertrich."), with Sapna Affidavit at ¶ 13 ("The credit card used by [Plaintiff] to order supplies for Freedom Rides was the business credit card of Frederick W. Hertrich IV, one of the owners of Freedom Rides, Inc."))

(D.I. 8, ex. BB; *id.*, ex. CC; *see also id.*, ex. AA (Employee Warning dated July 1, 2010 noting

that "[Plaintiff] IS ON PROBATION")) Thereafter, Plaintiff received an "Employee Warning"

dated July 1, 2010. (*Id.*, ex. AA) This warning, approved by Mr. Sapna, was issued because

Plaintiff called out sick from work from June 28, 2010 until July 1, 2010 without prior

supervisory approval. (*Id.*) Next, on July 26, 2010, Plaintiff received an "Employee Disciplinary

Action" (approved by Mr. Sapna), which was issued for eating food at her desk instead of in a

lunch room. (*Id.*, ex. BB) Finally, Plaintiff received another "Employee Disciplinary Action"

(approved by Mr. Sapna and dated August 2, 2010) indicating that Plaintiff was terminated from

Freedom Rides as of that day. (*Id.*, ex. CC) This last document states that Plaintiff was fired

because she attended the Delaware State Fair on July 29, 2010, after having earlier told Freedom

Rides that she could not report to work on that day due to illness. (*Id.*)

### C.    Procedural Background

On April 3, 2012, Plaintiff filed the Complaint against Defendants, alleging violations of

the ADA and the Delaware Workers' Compensation Act. (D.I. 1) In lieu of answering, on May

4, 2012, Defendants filed their respective Motions. (D.I. 7, 9) Briefing on the Motions was

completed on May 29, 2012. (D.I. 8, 10, 11, 13) On June 15, 2012, Judge Leonard P. Stark

referred this case to the Court to "hear and resolve all pretrial matters, up to and including the

resolution of case-dispositive motions." (D.I. 14)

## II.    DISCUSSION

### A.    Determination of Proper Treatment of Motions

Before proceeding to the merits, the Court must consider the appropriate treatment of

these Motions. Specifically, the Court must determine whether the Motions should be treated as

4

motions to dismiss for failure to state a claim, or whether they should instead be "converted" into motions for summary judgment.

Courts faced with a motion to dismiss must—except in situations not pertinent here—limit their consideration solely to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Thus, if on a Rule 12(b)(6) motion to dismiss:

> [M]atters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Such opportunity to present material requires "adequate notice [to the parties] of the . . . court's intention to convert." *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (citing *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989)).

Although it is preferable that such notice be expressly provided by court order or at a hearing, in some circumstances, this is not required. *Id.* at 288. For instance, the United States Court of Appeals for the Third Circuit has held that a non-movant has adequate notice that a court would convert the movant's motion to dismiss into a motion for summary judgment when the motion is "framed in the alternative as [a] motion[] for summary judgment." *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996). The Third Circuit has held that in such a case, if the non-movant thereafter does not object to the movant's submission of matter outside the pleadings, and otherwise submits its own matter not contained in the pleadings for the court's consideration, adequate notice has been provided and the motions may be considered as ones for

5

summary judgment. *Id.*

Here, it is clear that both sides have presented matter outside the pleadings, the consideration of which would require the Court to convert the Motions into motions for summary judgment. For instance, Defendants' Opening Briefs in support of the Motions attach numerous such exhibits, such as copies of Freedom Rides' Certificate of Incorporation. (D.I. 8, ex. A) Similarly, Plaintiff's Answering Brief attaches the affidavit of Ms. Blakeman—one of a number of affidavits attached to the parties' briefing on the Motions. (Blakeman Affidavit); *see also Hernandez v. Donovan*, Civil No. 10-726(NLH)(JS), 2012 WL 2524279, at \*2 (D. Del. June 28, 2012) (finding that court's consideration of declarations from prison officials, in assessing motion to dismiss civil rights complaint, required conversion of the motion into one for summary judgment).

The Court also finds that the parties had adequate notice that the Motions might be converted to motions for summary judgment. Although the Motions are not specifically entitled in the alternative as "motions for summary judgment," (*see* D.I. 7 ("Defendant Hertrich's . . . Motion to Dismiss")), both parties' briefs in support of the Motions invited the Court to convert the motions into ones for summary judgment if necessary.

More specifically, Defendant Hertrich submitted matters outside of the pleadings in support of the Motions and noted in its briefing that "when a [m]otion is made pursuant to [Rule] 12(b)(6) and matters outside the pleadings are presented, 'the motion must be treated as one for summary judgment under Rule 56.'" (D.I. 8 at 6 (quoting Fed. R. Civ. P. 12(d)) Defendant Freedom Rides did the same, and went on to note that "this Court may at this juncture determine whether a claim for relief has been stated under [Rule] 12(b)(6) and by application [Rule] 12(d)

6

and ultimately [Rule] 56." (D.I. 10 at 6-7 )

In response, as noted above, Plaintiff submitted material outside of the pleadings as an exhibit to her answering brief, and in that brief, recited the standards of review both for a motion to dismiss and a motion for summary judgment. (D.I. 11 at 5-6) Plaintiff went on to note that the court's consideration of the outside matters submitted by the Defendants would require conversion of the Motions under Rule 12(d). (*Id.* at 5 ("[B]oth Defendants . . . submitted matters outside the pleadings for the Court's consideration . . . [such that] [p]ursuant to [Rule] 12(d), if these matters are not excluded by the Court, then the motions will be treated as motions for summary judgment pursuant to [Rule] 56.")) Subsequently, Plaintiff argued that in the circumstances of this case, the Court could, if it wished, consider matters outside the pleadings. (*Id.* at 8) It asserted, however, that even if the Court did so, Plaintiff had presented sufficient evidence to survive a motion for summary judgment. (*Id.* at 8-9 ("Should this Court determine not to convert . . . [the Motions] into motions for summary judgment, the allegations of Plaintiff's well-pleaded Complaint are sufficient to [withstand attack] . . . [but] [e]ven if the Court considers the matters outside the pleadings presented by Defendants, there is at least a genuine issue of material fact as to whether [Plaintiff may prevail].")) Thereafter, in making this argument, Plaintiff repeatedly referenced the content of the Blakeman Affidavit. (*Id.* at 9)

Under these circumstances, the Court finds that all parties, including Plaintiff, had adequate notice that the Court might convert the Motions to ones for summary judgment. *See Reyes v. Sobina*, 333 F. App'x 661, 662 n.1 (3d Cir. 2009) (finding that the plaintiff was sufficiently on notice of the possible conversion to summary judgment where "the defendants submitted evidence with their motion to dismiss[,] [a particular defendant's] Rule 12(b) motion

7

invited the District Court to convert it to a request for summary judgment if necessary", and the plaintiff responded to the defendant's motion by submitting outside material of his own); *see also Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, Civil Action No. 09-cv-022-SLR-MPT, 2011 WL 2015221, at *2 n.6 (D. Del. May 24, 2011) ("The court finds that plaintiffs' objections to the court's conversion of the motion to dismiss are waived due to their entry and use of evidence outside of the pleadings."). Therefore, in light of the fact that all parties have presented evidence outside the pleadings for the Court's review and that, taken together, the amount of such material is robust, the Court recommends that the Motions be treated as motions for summary judgment pursuant to Rule 12(d). *See Curry v. Aerotek, Inc.*, No. 2:11-cv-02913-SHM-cgc, 2013 WL 3146812, at *5 (W.D. Tenn. June 18, 2013) (recommending conversion where consideration of the defendants exhibits "appear[ed] to be the most thorough manner to resolve the motion"); *Nason v. Am. Canadian Tour, Ltd.*, 942 F. Supp. 200, 223 (D. Vt. 1996) (finding "the most practical alternative under Rule [12(d)] [was] to treat the Motion as one for summary judgment" where "[b]oth parties . . . presented materials outside the pleadings, and ha[d] already relied extensively in their arguments on these materials"); *see also* 5C Charles Alan Wright et al., Federal Practice & Procedure § 1366 (3d ed.) ("When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion in accordance with the standard set forth in Rule 56, the district court is likely to accept it; when it is scanty, incomplete, or inconclusive, the district court probably will reject it.").

## B.      Standard of Review

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

8

Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a

genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 585 n.10 (1986). If the moving party has demonstrated the absence of a genuine

dispute of material fact, the nonmovant must then "come forward with specific facts showing

that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks omitted). If the

nonmoving party fails to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof, the moving party is entitled to judgment as a matter

of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this process, the Court

will "draw all reasonable inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must

"do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. United States Postal Serv.*, 409 F.3d 584,

594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue")

(internal quotation marks and citation omitted). The "mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Facts that could alter

the outcome are "material," and a factual dispute is genuine only where "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at

249-50 (internal citations omitted).  A party asserting that a fact cannot be—or, alternatively,

is—genuinely disputed must support the assertion either by citing to "particular parts of materials

in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for the purposes of the motion only), admissions,

interrogatory answers, or other materials"; or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

## C.       Defendants' Arguments in Support of Motions

In the Motions, Defendants challenge the entirety of Plaintiff's Complaint.  With respect

to Plaintiff's ADA claim, Defendants both argue that they do not qualify as Plaintiff's

"employer" as the term is defined by the ADA and, thus, Plaintiff's ADA claim must fail.  (*See,*

*e.g.*, D.I. 8 at 6; D.I. 10 at 6)  With respect to Plaintiff's Delaware Workers' Compensation Act

claim, Defendants both assert that if Plaintiff's ADA claim fails, the Court would be left with no

claims over which it has original jurisdiction, and should thus dismiss this state law claim

without prejudice, with leave for Plaintiff to timely re-file in the Superior Court of the State of

Delaware.  (D.I. 8 at 10 (citing 28 U.S.C. § 1367(c)(3)); D.I. 10 at 12 (same))  However, Hertrich

makes a second argument as to why this claim should be dismissed as to it—asserting that the

claim cannot stand because Hertrich was not Plaintiff's "employer" under the meaning of the

state statute.  (D.I. 8 at 10)  The Court will address these arguments in turn.

### 1.       Americans with Disabilities Act

The ADA only applies to employers "who ha[ve] 15 or more employees for each working

10

day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42

U.S.C. § 12111(5)(A). In situations where, as is the case here, a plaintiff attempts to aggregate

the employees of multiple entities to satisfy this numerosity requirement, courts employ what is

sometimes referred to as the "single employer test."[6] *See Gift v. Travid Sales Assocs., Inc.*, 881

F. Supp. 2d 685, 692-693 (E.D. Pa. 2012); *Tokash v. Foxco Ins. Mgmt. Servs., Inc.*, Civil Action

No. 3:10-cv-872, 2012 WL 1677437, at *6-7 (M.D. Pa. May 14, 2012). Under this test, two

"nominally distinct entities" may be treated as a "single employer" under any one of three

---

[6]      The parties disagreed as to the test that should be applied to the question of whether the ADA's numerosity requirement is satisfied. In their opening briefs, Defendants argued that what is known as the "integrated enterprise" test should apply in this situation. (*See, e.g.*, D.I. 8 at 7)  In her answering brief, Plaintiff disagreed, and instead argued for application of the "single employer test." (D.I. 11 at 6-7)  In their reply brief, Defendants continued to advocate for application of the "integrated enterprise" test but argued that, under either test, Plaintiff's claims fail. (D.I. 13 at 4)  The Court agrees with Plaintiff that the correct test to be applied is the "single employer test."  As Plaintiff correctly notes, in *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003), the Third Circuit rejected application of the "integrated enterprise" test in the Title VII context. *Id.* at 84-85. Although the *Nesbit* Court was dealing specifically with a Title VII claim, the considerations which led that Court to reject the "integrated enterprise" test are similarly present with respect to an ADA claim. *Compare Nesbit*, 347 F.3d at 85 (noting that "a significant purpose of the fifteen-employee minimum in the Title VII context is to spare small companies the considerable expense of complying with the statute's many-nuanced requirements") (citations omitted), *with Clackamas Gastroenterology Assocs., P.C v. Wells*, 538 U.S. 440, 447 (2003) ("[T]he congressional decision to limit the coverage of the [ADA] to firms with 15 or more employees has its own justification that must be respected—namely, easing entry into the market and preserving the competitive position of smaller firms."). Moreover, since *Nesbit*, other courts in this Circuit have applied the "single employer test" beyond the Title VII context, and, specifically, in the ADA context, in determining whether the numerosity requirement was satisfied. *See, e.g., Kelly v. Horizon Med. Corp.*, Civil Action No. 3:11-CV-1501, 2012 WL 32925, at *4, *8 (M.D. Pa. Jan. 6, 2012) (applying single employer test as to ADA claim); *Cheskawich v. Three Rivers Mortg. Co., L.L.C.*, No. 2:05CV691, 2006 WL 2529591, at *3-4 (W.D. Pa. Aug. 31, 2006) (same); *see also DeAngelo v. DentalEZ, Inc.*, Civil Action No. 90-535, 2011 WL 1496513, at *2 (E.D. Pa. Apr. 15, 2011) ("Notwithstanding the abdication of the Title VII claim, the Court perceives no persuasive basis for failing to apply the *Nesbit* rubric [to the surviving ADEA claim]."). For these reasons, the Court will apply the "single employer test" articulated in *Nesbit* to this issue.

11

situations. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85 (3d Cir. 2003).

Under the last of these three situations (the only one that is argued to apply here) a court should "look to the factors courts use in deciding whether substantively to consolidate two or more entities in the bankruptcy context." *Id.* at 86. This "open-ended, equitable inquiry", "at base[,] seeks to determine whether two or more entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice." *Id.* at 86-87. While factors going to financial entanglement of the two entities may be relevant, in the context of employment discrimination "the focus more often rests on the degree of operational entanglement—whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." *Id.* at 87. In this regard, courts may look to the following factors, among others:

> (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (*e.g.*, hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

*Id.*

In *Nesbit*, the Third Circuit granted summary judgment for the defendants on this issue, finding that there was insufficient entanglement to consider the two entities to be a single employer for purposes of Title VII's 15-employee requirement. *Id.* at 88. The case involved two companies, Gears Unlimited, Inc. ("Gears") and Winters Performance Products ("Winters"). *Id.* at 75-76. These two entities shared a common owner, the founder of Winters, who owned a ten percent stake in Gears and a fifty percent stake in Winters. *Id.* at 75. Moreover, the two entities

12

coordinated to a certain extent in hiring. *Id.* at 88-89. In particular, Winters would post "help wanted" signs for Gears and would direct job applicants to Gears' plant to interview with Gears' manager, who had, with limited exception, all of the hiring authority for Gears. *Id.* at 75. Taking these facts into account, the Third Circuit found that "[i]n the absence of more significant operational entanglement, common ownership and *de minimis* coordination in hiring are insufficient bases to disregard the separate corporate forms of Gears and Winters." *Id.* at 89. However, the *Nesbit* Court stated, by way of example, that the "outcome might be different if Gears had no say in hiring its own employees, if Gears and Winters held themselves out to job applicants as a single company, if the two companies' human resources functions were entirely integrated, and/or if they did not maintain separate payrolls and finances." *Id.*

With that background in mind, the Court will apply the *Nesbit* factors to determine whether there is a genuine issue of material fact as to whether Hertrich and Freedom Rides may be considered to be a "single employer" for purposes of the ADA.

> a.   **The degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters)**

The first factor is the degree of unity between Freedom Rides and Hertrich. Here, the evidence is mixed as to the time period in question, with certain record evidence suggesting separation of the entities, but other evidence indicating a real degree of unity.[7]

---

[7]     The relevant time period for determining whether two entities are a "single employer" for purposes of the ADA's numerosity requirement is the year preceding a plaintiff's termination and the year of a plaintiff's termination. *Cf. Clements v. Housing Auth. of the Borough of Princeton*, 532 F. Supp. 2d 700, 703-04 (D.N.J. 2007) (examining whether, during the year in which the "[p]laintiff's position was eliminated" and the preceding year, the defendants "employ[ed] more than 14 employees for each working day in each of 20 or more calendar weeks"). Thus, to the extent that the Court references the state of the evidence with

13

In terms of company ownership, although members of the same family owned both entities, there does not appear to be any individual overlap in ownership. Freedom Rides is owned by Christopher D. Hertrich and Frederick W. Hertrich, IV. (D.I. 8, ex. T) Hertrich is wholly owned by The Hertrich Family of Auto Dealerships, Inc., (D.I. 8, ex. V), which, in turn, is wholly owned by Frederick W. Hertrich III, (*id.*, ex. Y).[8]

With respect to corporate management, although Defendants argue that "Freedom Rides maintains its own group of managers and employees that are not shared, transferred or held in common with any other entity[,]" (D.I. 8 at 4), evidence to the contrary has been presented. Specifically, it appears that, at least for some period of time, there is a genuine issue of material fact as to whether both Freedom Rides and Hertrich employed at least Barry Smi and Katie Owens in common.

With regard to Mr. Smi, Plaintiff avers that she "was interviewed in the Milford office of [Hertrich] by Barry Smi, Human Resources Director for Hertrich." (Blakeman Affidavit at ¶¶ 2-3) For their part, Defendants do not appear to disagree with Plaintiff's characterization that Mr. Smi was Human Resources Director for Hertrich at the time Plaintiff was hired. (*See* D.I. 13 at 2) Rather, Defendants seem to state that Mr. Smi was *also* a part-time employee of Freedom Rides at the time he interviewed Plaintiff. Specifically, Mr. Smi avers that:

---

respect to the ADA's numerosity requirement, it is referring to facts as they existed during the time period from 2009 (the year preceding Plaintiff's termination) until 2010 (the year of Plaintiff's termination).

[8]     With that said, there is evidence suggesting overlap in ownership of company assets. For example, although neither of Freedom Rides' two owners has an ownership stake in Hertrich, one of the two—Frederick W. Hertrich, IV—owns Hertrich's Milford facility. (Sapna Affidavit at ¶ 11)

Prior to August 2009, I was the Human Resources Director for the
Hertrich Family of Automobile Dealerships. . . . In August 2009, I
submitted my retirement *plans* whereby I *would be retiring* from the
Hertrich Family of Automobile Dealerships. . . . Upon submission of my
retirement plans, I was contacted by Fred Hertrich IV and George H.
Sapna III about working part time for Freedom Rides[]. . . . After meeting
with Fred Hertrich IV and George H. Sapna III[,] I agreed to accept the
position with Freedom Rides[]. . . . Subsequent to my agreeing to accept
the position with Freedom Rides[], I met with and interviewed [Plaintiff]
on behalf of Freedom Rides[].

(Smi Affidavit at ¶¶ 1-5 (emphasis added))

Plaintiff further avers that when she was disciplined at some point for alleged internet

abuse, "Katie Owens, who succeeded [Mr.] Smi as Hertrich's Human Resources Director,

prepared the paperwork regarding the issue" and met with Plaintiff and Mr. Sapna regarding the

issue. (Blakeman Affidavit at ¶ 7) Defendants acknowledge that Mrs. Owens "was employed by

the Hertrich Family of Automobile Dealerships as the Human Resources Director." (Sapna

Affidavit at ¶ 14) However, Mr. Sapna also avers that "Mrs. Owens holds the position of

Employment Director with Freedom Rides," (*id.* at ¶ 15), a position she appears to have held

since at least May 4, 2010, (*see* D.I. 8, ex. N at ii (Freedom Rides' Employee Handbook dated

May 4, 2010, listing Katie S. Owens as Employment Director)). Although the record does not

make explicit when Mrs. Owens' tenure at Hertrich ended, the facts referenced above can support

a reasonable inference that there was some overlap as to her managerial work at both entities.

Drawing all reasonable inferences in favor of Plaintiff then, the Court finds that she has

set forth evidence sufficient to create a genuine issue of material fact as to whether Mr. Smi and

Mrs. Owens were employees held in common by Freedom Rides and Hertrich—at least for some

amount of time during Plaintiff's tenure. This suggests some amount of operational

entanglement among Defendants' officers. *See Tokash*, 2012 WL 1677437, at \*9 (finding fact that managerial employees were assigned to both entities, and fact that a single employee of both entities handled payroll and insurance matters for both entities, suggested operational entanglement between the companies).

Next, with respect to business functions, Defendants have presented undisputed evidence indicating that Freedom Rides and Hertrich have separate business licenses, (D.I. 8, exs. E, F), separate bank accounts, (*id.*, exs. G, H, I, J, K, L), a separate payroll program, (*id.*, ex. R), a separate Policy Manual, (*id.*, ex. M) and a separate Employee Handbook, (*id.*, ex. N).

However, Plaintiff has presented evidence sufficient to permit a reasonable inference that there was meaningful overlap with respect to hiring and personnel matters. With respect to her hiring, Plaintiff avers that she "was interviewed in the Milford office of [Hertrich] by Barry Smi, Human Resources Director for Hertrich" and that "Mr. Smi made the decision to hire [her]." (Blakeman Affidavit at ¶¶ 2-3) In opposition, Defendants present affidavit evidence alleging that Mr. Smi interviewed Plaintiff on behalf of Freedom Rides, and that afterwards, he provided information to Mr. Sapna, Freedom Rides' President, about Plaintiff and her qualifications. (Sapna Affidavit at ¶¶ 4-5; *see also* Smi Affidavit at ¶¶ 5-6) Thereafter, Mr. Sapna avers to have used the information to "alone ma[ke] the decision to offer [Plaintiff] a job" and states that "[Mr.] Smi did not make the decision to hire [Plaintiff,] contrary to her assertions in her affidavit." (Sapna Affidavit at ¶¶ 6-7; *see also* Smi Affidavit at ¶ 7) The Court finds that these competing affidavits create a genuine issue of material fact as to who made the decision to hire Plaintiff, and, relatedly, whether Hertrich and Freedom Rides consolidated work regarding the hiring function during this time. *See Equal Emp't Opportunity Comm'n v. Original Hot Dog*

16

*Shops, Inc.*, Civil Action No. 06-1243, 2007 WL 316389, at *4 (W.D. Pa. Jan. 31, 2007)

(denying motion to dismiss Title VII claim and, in analyzing whether two entities were

interconnected pursuant to the *Nesbit* test, finding that a factual question existed as to whether

the entities were a single employer, where the parties produced competing affidavits as to the

extent to which the manager of one of the entities made staffing decisions at the other entity).[9]

With respect to personnel matters, Plaintiff also avers that "[d]uring the period of [her]

employment, if issues arose relating to personnel, [she] was instructed to speak, and did speak,

with a representative in Hertrich's Human Resources Office." (Blakeman Affidavit at ¶ 6) It is

in this vein that Plaintiff further avers that when she was disciplined for alleged internet abuse,

Mrs. Owens (according to Plaintiff, then allegedly "Hertrich's Human Resources Director")

prepared the paperwork and met with her and Mr. Sapna regarding the issue. (*Id.* at ¶ 7) In their

reply brief, Defendants do not directly address Plaintiff's contention that certain Freedom Rides

personnel matters were handled by an individual who also worked in Hertrich's Human

Resources Office—except to aver that, contrary to Plaintiff's assertions, "Mrs. Owens did not

prepare any paperwork regarding any disciplining of [Plaintiff]", rather, all such paperwork was

prepared by Mr. Sapna himself.[10] (Sapna Affidavit at ¶ 16) The Court finds that this evidence

---

[9]     *Cf. Matthes v. MCP Hosp. of Phila.*, Civil Action No. 06-1156, 2010 WL 2348699, at *1 n.3 (E.D. Pa. June 9, 2010) (finding that competing affidavits as to whether the plaintiff filed prison grievance forms "create[d] a genuine issue of material fact, [such that] summary judgment [was not] appropriate.").

[10]     Although Defendants have submitted a number of written disciplinary warnings issued to Plaintiff in 2010, these warnings do not resolve the dispute as to who prepared Plaintiff's warning regarding alleged internet abuse. Specifically, none of these warnings appear to be a warning regarding discipline for internet abuse. (*See* D.I. 8, ex. AA (warning dated July 1, 2010 regarding calling out of work without prior authorization); *id.*, ex. BB (warning dated July 26, 2010 regarding eating in an area available to the public); *id.*, ex. CC (warning dated

too raises a genuine issue of material fact as to the degree of unity between Hertrich and Freedom Rides in terms of personnel matters. Specifically, drawing all reasonable inferences in favor of Plaintiff, a jury could conclude that employees of Hertrich's Human Resources Office played some significant role as to Freedom Rides' personnel matters.[11]

Lastly, Plaintiff's claim as to the first *Nesbit* factor is further strengthened, at least to some degree, by the undisputed fact that she was interviewed for employment at Hertrich's offices, and that, for the first few weeks of her employment, she worked out of Hertrich's offices while performing tasks for the benefit of Freedom Rides. (Blakeman Affidavit at ¶¶ 2, 4; Smi Affidavit at ¶¶ 8-11; Sapna Affidavit at ¶¶ 8-11) Courts have noted that the sharing of corporate space can suggest that two entities considered themselves to be one integrated unit. *See, e.g.,*

---

August 2, 2010 regarding calling out of work without a valid excuse)) However, each of these warnings do refer to a *prior* written warning from June 24, 2010 (one not presented to the Court) wherein Plaintiff was placed on "90-day probation . . . for violating company policy." (*See, e.g., id.,* ex. CC) Moreover, the warnings that were submitted do not indicate that Mr. Sapna prepared them. Rather, they merely indicate that Mr. Sapna signed off on them, and that "Trudy Carey"—who is not listed on the Freedom Rides' employee structure chart, (D.I. 8, ex. S), or in the Freedom Rides Employee Register, (D.I. 10, ex. DD)—witnessed the disciplinary warnings. (*See, e.g.,* D.I. 8, ex. AA) Ms. Carey is listed on one of the warnings as an "Executive Assistant[,]" though it is not clear for what entity she worked in that capacity. (*Id.*)

[11]      *Compare Kelly,* 2012 WL 32925, at *4 (finding plaintiff, a physician assistant, had pled sufficient facts to establish that two entities were a single employer under the *Nesbit* "consolidation" theory, in that there was a "significant degree of unity between [the two entities, Horizon Medical Corporation ("Horizon") and the physician, Dr. Jaditz], at least on the subject of personnel matters" where Horizon's human resources manager was present at a meeting with Dr. Jaditz wherein complaints against the plaintiff were raised and certain changes to the terms of her employment were first broached, and where a revised work agreement on Horizon letterhead was later presented to plaintiff), *with Gift,* 881 F. Supp. 2d at 693 (granting motion for summary judgment to defendant as to numerosity requirement where, *inter alia,* there was no record evidence to support the first factor, such as common officers or common management, and no evidence to suggest that one of the two entities at issue "had any authority to conduct hiring, firing, or other personnel matters" as to the other entity).

*Tokash*, 2012 WL 1677437, at *8 (finding the fact that an employee of one entity worked at the office location of the second entity "further blur[red] the lines between the[] two entities"); *see also Dobrick-Peirce v. Open Options, Inc.*, No. 2:05CV1451, 2006 WL 2089960, at *3 & n.3 (W.D. Pa. July 25, 2006) (denying a motion to dismiss for failure to satisfy numerosity requirement where plaintiff pled, *inter alia*, that the two entities maintained the same suite of offices).

### b.     Whether the two entities present themselves as a single company such that third parties dealt with them as one unit

As to the second factor, Defendants point to evidence indicating that they took care to distinguish themselves to the outside world and did not present themselves as a single entity. For example, they cite to evidence that Freedom Rides paid for its own insurance, (D.I. 8, exs. I, J), and its own applicant testing, (*id.*, exs. K, L). (D.I. 13 at 6) Moreover, other evidence put forward in support of Defendants' position as to the first factor above—such as the maintenance of different business licenses, a separate payroll and separate employee manuals and handbooks—also supports Defendants' assertion here.

On the other hand, Freedom Rides' Employee Handbook, issued on May 4, 2010, lists all of Freedom Rides' corporate officers as having e-mail addresses with the "@hertrichs.com" domain. (D.I. 8, ex. N at ii) For instance, Mr. Sapna, Freedom Rides' President, is listed as having an e-mail address ending with "@hertrichs.com", as does Freedom Rides' Vice President, Treasurer, Secretary and Employment Director (Mrs. Owens). (*Id.*) This evidence could well suggest to third parties that the entities held themselves out—at least in their communications via e-mail—as one integrated unit. *See Tokash*, 2012 WL 1677437, at *8 (finding the fact that

employees of the one entity had e-mail addresses incorporating the domain name of the other entity to be "compelling" evidence that "could well communicate to the outside world that [they] were employee[s] of [the other entity]"). So too could the other evidence cited in relation to the first factor above, including the fact that the entities coordinated on certain administrative functions, and shared personnel and office space at times.

Ultimately, while the greater quantum of evidence suggests that the two entities presented themselves as different units, there is evidence of record supporting a contrary conclusion.

        c.      **Whether a parent company covers the salaries, expenses, or losses of its subsidiary**

With respect to this third factor, on the one hand, there are multiple pieces of evidence to indicate that the companies covered their own financial obligations. To that end, Defendants have presented undisputed evidence that Freedom Rides paid its own payroll, (*see* D.I. 8, ex. G), rent, (*id.*, ex. H), insurance, (*id.*, exs. I, J), and costs associated with screening applicants, (*id.*, exs. K, L).

On the other hand, Plaintiff has averred that, during the first few weeks of her employment, she "was instructed to use, and did use, a credit card assigned to Hertrich" to purchase supplies for the Dover location of Freedom Rides. (Blakeman Affidavit at ¶¶ 4-5) Defendants contest this assertion, submitting the affidavit of Mr. Sapna in which he alleges that:

> The credit card used by [Plaintiff] to order supplies for Freedom Rides was the business credit card of Frederick W. Hertrich IV, one of the owners of Freedom Rides[]. Any purchase[s] made with this credit card were reimbursed by Freedom Rides[]. [Plaintiff] was not provided with a credit card from the Hertrich Family of Automobile Dealerships for making payments for any purchases.

(Sapna Affidavit at ¶ 13) In light of these competing affidavits and the lack of more dispositive

evidence on the issue (i.e., the submission of receipts from these purchases), the Court finds that

there is a genuine issue of material fact as to whether, at least to this limited extent, Hertrich

covered certain expenses of Freedom Rides. *Cf. DeAngelo v. DentalEZ, Inc.*, Civil Action No.

90-535, 2011 WL 1496513, at *3-4 (E.D. Pa. Apr. 15, 2011) (finding the plaintiff created a

material issue of fact as to whether the two entities could be considered a single employer where,

*inter alia*, the parent provided the subsidiary with capital on a daily basis for all its

expenditures).[12]

In the end, while the greater amount of evidence suggests that Freedom Rides covered its

own expenses without the help of Hertrich, there is some evidence of record supporting a

contrary conclusion.

### d.      Whether one entity does business exclusively with the other

With respect to the final factor, Plaintiff avers that "[d]uring the period of [her]

employment, vehicles belonging to Freedom Rides would be maintained by Hertrich's service

department using parts supplied by Hertrich's parts department." (Blakeman Affidavit at ¶ 8)  In

response, Defendants do not contest this assertion.  Rather, Mr. Sapna avers that, in addition to

using Hertrich to service Freedom Rides' vehicles, Freedom Rides also uses numerous other

facilities to perform servicing and repairs, including "One Stop and Houser's, among others."

(Sapna Affidavit at ¶ 19)  In addition, Mr. Sapna avers that Freedom Rides "receives invoices

from Hertrich's . . . for all services performed . . . and pays Hertrich's . . . for the services

---

[12]      *Cf. In re Fleming Companies*, Bankruptcy No. 03-10945(MFW), Adversary No.
05-75117(KJC), 2006 WL 1423348, at *1 n.1 (Bankr. D. Del. May 17, 2006) (finding a genuine
issue of material fact as to whom certain products were sold and who actually owed a debt to the
defendant, where the parties provided competing affidavits but failed to provide more conclusive
evidence on this issue, such as canceled checks).

performed." (*Id.* at ¶¶ 20-21) While there is thus some evidence that, at least with respect to

vehicle maintenance and repair, Hertrich and Freedom Rides did "business" with each other, this

business was by no means exclusive. Moreover, with respect to the companies' primary

businesses—leasing and/or selling vehicles—there is no evidence to suggest that Freedom Rides

and Hertrich did business with one another, much less exclusively. *See Cheskawich v. Three*

*Rivers Mortg. Co., L.L.C.*, No. 2:05CV691, 2006 WL 2529591, at *3-4 (W.D. Pa. Aug. 31,

2006) ("Finally, because the t[w]o companies were engaged in separate and distinct businesses,

there is no evidence that one entity does business exclusively with the other.").

     Because the evidence presented undisputedly indicates that Freedom Rides and Hertrich

did not do business exclusively with one another, this factor weighs against a finding of

operational entanglement.

          **e.**    **Conclusion**

     In this case, there are certainly portions of the record that support Defendant's Motion.

For example, it is undisputed that there is no common ownership between Hertrich and Freedom

Rides, and that the two entities do not do business exclusively with each other. And, as set forth

above, there are many other facts that bolster Defendants' assertion that the two companies had a

separate, independent existence.

     Yet viewing the facts in the light most favorable to Plaintiff, there are also sufficient facts

of record to support the conclusion that Freedom Rides and Hertrich: (1) held certain officers in

common; (2) integrated certain personnel functions, including the hiring of and disciplining of

employees; (3) shared office space (at least at times); (4) presented themselves, at least in certain

respects, as a single company to third parties; and (5) shared certain expenses and other

22

resources. This amount of evidence supporting Plaintiff's allegation of operational interconnectedness is clearly more robust than that at play in *Nesbit*, where the record indicated no connection beyond "common ownership and *de minimis* coordination in hiring[.]" *Nesbit*, 347 F.3d at 89. It is also multi-faceted, with Plaintiff being able to point to multiple aspects of the companies' operations at the time in question in order to support its allegation.

Although the issue is a close one, the Court concludes that, after considering the entire record, this evidence is sufficient to create a genuine issue of material fact as to whether the single employer test can be satisfied. *Compare Kelly v. Horizon Med. Corp.*, Civil Action No. 3:11-CV-1501, 2012 WL 32925, at *4, *8 (M.D. Pa. Jan. 6, 2012) (denying motion to dismiss where the plaintiff had pled sufficient facts to establish that two entities, Horizon Medical Corporation ("Horizon") and a physician, Dr. Jaditz, were a single employer under the *Nesbit* "consolidation" theory, in that there was a "significant degree of unity between [the two entities], at least on the subject of personnel matters" where Horizon's human resources manager was present at a meeting with Dr. Jaditz wherein complaints against the plaintiff were raised and certain changes to the terms of her employment were first broached, and where a revised work agreement on Horizon letterhead was later presented to plaintiff), *with Vitalis v. Sun Constructors, Inc.*, 481 F. App'x 718, 278 (3d Cir. 2012) (affirming district court's grant of summary judgment that the two entities, Excel Group, Inc. ("Excel") and Sun Constructors, Inc. ("Sun"), were not a single employer where, although there was common stock ownership between the entities and Excel performed various administrative functions for Sun (including recruiting), Sun paid Excel for those services, and, moreover, there was no evidence that Excel had any influence over the hiring or firing decisions made by Sun, and the two entities' offices

23

were geographically separated). For that reason, the Court recommends that Defendants'
Motions with respect to Plaintiff's ADA claim be denied.

## 2. Delaware Workers' Compensation Act Claims

Defendants also move, on separate grounds, to dismiss Plaintiff's Workers'
Compensation Retaliation claim pursuant to Del. Code Ann. tit. 19, § 2365 ("Section 2365").[13]
Defendants both argue that if the Court dismisses Plaintiff's ADA claim, it should decline to
exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c)(3). (D.I. 8 at
10; D.I. 10 at 11-12) In light of the Court's resolution of the Motion with respect to Plaintiff's
ADA claim, the Court recommends that Defendants' Motions be denied as moot on this ground.

Additionally, Hertrich argues that the claim, as to it, should be dismissed because
Hertrich was not Plaintiff's "employer" under the particular meaning of that term as
contemplated by Section 2365. (D.I. 8 at 10) In this vein, Hertrich argues that "Freedom Rides,
not Hertrich[,] paid Plaintiff, disciplined her and ultimately terminated Plaintiff's employment"
and that, under the "integrated enterprise" test, Hertrich is not Plaintiff's employer. (*Id.*)

Plaintiff, in her Answering Brief, does not address this challenge to the Complaint in any
way. (*See* D.I. 11) In such situations, where a party responds to a dispositive motion, but only
attempts to defend some subset of the claims that are subject to the motion, courts have
consistently held that the claims that are not defended are deemed abandoned. *See, e.g., Pollis v.
Bd. of Chosen Freeholders*, Civil Action No. 09-3009 (SRC), 2012 WL 1118769, at *3 (D.N.J.

---

[13]      This statute provides that "[i]t shall be unlawful for any employer or the duly
authorized agent of any employer to discharge or to retaliate or discriminate in any manner
against an employee as to the employee's employment because such employee has claimed or
attempted to claim workers' compensation benefits from such employer . . . ." Del. Code Ann.
tit. 19, § 2365.

Apr. 13, 2012) (finding plaintiff's failure to respond to the defendant's qualified immunity argument "when discussing her retaliation and inadequate medical care claims . . . as a concession that [the] [d]efendants are correct" that they are immune from liability under the doctrine of qualified immunity); *Lawlor v. ESPN Scouts, LLC*, Civil Action No. 2:10-cv-05886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (finding promissory estoppel claim abandoned where defendants, in moving to dismiss, argued that the plaintiff was paid the amount owed, and where plaintiff did not respond in any way to the defendants' argument) (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) ("We find this undeveloped argument has been waived.")); *Carraway v. Borough of Wilkinsburg*, C.A. No. 9-372, 2009 WL 2981955, at *2 (W.D. Pa. Sept. 11, 2009) ("The Court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (citations omitted); *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) ("Plaintiff failed to address this portion of defendant's motion for summary judgment in her response . . . [t]herefore, plaintiff's failure . . . constitutes abandonment of those claims."). Thus, by failing to address this challenge to the Complaint in any way, the Court finds that Plaintiff has abandoned its Delaware Workers' Compensation Act claim against Hertrich and recommends that Hertrich's Motion be granted in this regard.[14]

---

[14]     The situation at issue here is in contrast to cases where a party fails to respond in any way to a dispositive motion. In those situations, the Third Circuit has noted that "unless a plaintiff's failure to oppose a motion can truly be understood to reflect that the motion is unopposed . . . we have expressed a preference for an assessment of the complaint on its merits. . . . [But, in any event], a district court must analyze the [factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984)] before concluding that the sanction of dismissal is warranted." *Xenos v. Hawbecker*, 441 F. App'x 128, 131 (3d Cir. 2011) (internal citations omitted); *see also Shuey v. Schwab*, 350 F. App'x 630, 632-33 (3d Cir. 2009). Here, the Court is dealing with a different situation—Plaintiff has responded to the motion at issue but has failed to

## III.    CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' Motions, (D.I. 7; D.I. 9), be converted to motions for summary judgment, and that they be GRANTED-IN-PART and DENIED-IN-PART.  Specifically, the Court recommends that:

(1) Defendants' Motions as to the ADA claim be DENIED;

(2) Freedom Rides' Motion as to the Delaware Workers' Compensation Act claim be DENIED as moot; and

(3) Hertrich's Motion as to the Delaware Workers' Compensation Act claim be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1) and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order in Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

---

address the full scope of the arguments attacking the Complaint.  In such a circumstance, as district courts have found in similar cases, the unaddressed claim is deemed abandoned.

Dated: July 10, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE